**UNITED STATES of America,**
**Appellee,**

v.

**Garth MAYERS, Defendant–Appellant.**

**No. 05–2095–cr.**

United States Court of Appeals,
Second Circuit.

Feb. 2, 2007.

---

Appearing for Appellee: Andrea Goldberg, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, on the brief; John Buretta, Emily Berger, Assistant United States Attorneys, of counsel), Brooklyn, NY.

Appearing for Defendant–Appellant: Randa D. Maher (Jeffrey G. Pittell, on the brief), Great Neck, NY.

Present: Hon. SONIA SOTOMAYOR, Hon. ROBERT A. KATZMANN, Circuit Judges, Hon. MIRIAM GOLDMAN CEDARBAUM, District Judge.*

## SUMMARY ORDER

Defendant-appellant Garth Mayers appeals from an April 26, 2005 judgment of the United States District Court of the Eastern District of New York (Sifton, J.) convicting him, following a jury trial, of one count of conspiring to distribute and to possess with intent to distribute at least 50 grams of cocaine base, or crack, in violation of 21 U.S.C. §§ 841 and 846, and sentencing him principally to a term of 151 months' imprisonment. We assume the parties' familiarity with the underlying facts and procedural history.

██ Mayers contends that the evidence adduced at trial was insufficient to establish that he conspired to distribute more than 50 grams of crack because (1) there was an apparent inconsistency in drug dealer Aubrey McFarlane's testimony regarding how often he referred drug customers to Mayers, (2) McFarlane did not

* The Honorable Miriam Goldman Cedarbaum, United States District Judge for the Southern District of New York, sitting by designation.

testify that he ever directly witnessed Mayers selling crack to "dime bag" buyers, and (3) McFarlane's testimony, in Mayers's view, was undermined by that of another witness, Detective Correa, who did not specifically testify that she saw Mayers selling drugs during most of the period of the conspiracy. It appears that Mayers's contention is based on the erroneous assumption that there must be proof regarding the actual amount that either he or the conspiracy actually distributed, when in fact the essence of a drug conspiracy charge is the agreement to distribute drugs. *United States v. Hendrickson,* 26 F.3d 321, 333 (2d Cir.1994). Even with the flaws in the evidence noted by Mayers, sufficient evidence was presented from which a reasonable jury could conclude that he was part of a group of drug dealers who conspired to distribute more than 50 grams of crack in the Marcus Garvey Village housing project. "We defer to the jury's determination of the weight of the evidence ... and to the jury's choice of the competing inferences that can be drawn from the evidence." *United States v. Reifler,* 446 F.3d 65, 94 (2d Cir.2006) (quoting *United States v. Morrison,* 153 F.3d 34, 49 (2d Cir.1998)). Mayers has failed to meet the "heavy burden" to prevail on his challenge to the sufficiency of the evidence. *Reifler,* 446 F.3d at 94.

■ Second, Mayers claims that there was impermissible variance between the conspiracy charged in the indictment and the one proved at trial because the evidence at trial failed to establish either that Mayers and co-defendant Wilfred Burkett were part of a single conspiracy or that Mayers was part of a larger conspiracy to sell crack. We disagree. The evidence at trial established, among other things, that marijuana and crack dealers in Marcus Garvey Village had an informal agreement to refer customers to one another, and that Mayers, Burkett and a third person, Dale Favorite, sometimes jointly sold crack to customers. Even if, as Mayers contends, drug dealers in Marcus Garvey Village maintained a "free-enterprise zone" without a rigid leadership structure, and Mayers and Burkett at one point sold crack from different suppliers, the evidence adduced was nonetheless sufficient to establish the existence of the conspiracy among Mayers, Burkett and "others" alleged in the indictment, because it shows "that each alleged [conspirator] agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Maldonado–Rivera,* 922 F.2d 934, 963 (2d Cir.1990) (quoting *United States v. Martino,* 664 F.2d 860, 876 (2d Cir.1981)).

■ Third, Mayers contends that the government committed misconduct at trial by eliciting testimony from McFarlane regarding Mayers's prior bad acts without first providing him with notice as required under Federal Rule of Evidence 404(b). Assuming *arguendo* that the district court correctly determined that the introduction of this evidence was improper, we agree with the government that Mayers was not deprived of a fair trial as a result. *See United States v. Forlorma,* 94 F.3d 91, 94 (2d Cir.1996). The testimony was brief and isolated, and could plausibly have been elicited as background for McFarlane's testimony, undermining the contention that the prosecution acted in bad faith. *See United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981) (noting that the severity of a prosecutorial error depends in part on its extent and on whether it was intentional). The district court also cut off this line of questioning immediately and instructed the jury "not to hold this

against either defendant." *Forlorma*, 94 F.3d at 95. Moreover, we are confident that Mayers would still have been convicted had this evidence of prior bad acts not been elicited. *Id.*

■ Fourth, Mayers contends that the district court erred by admitting Favorite's recorded telephone conversations as nonhearsay statements of a co-conspirator because no connection was established between Favorite and the charged conspiracy. Fed.R.Evid. 801(d)(2)(E). Because Mayer failed to object to the admission of these recordings, our review is for plain error. Fed.R.Crim.P. 52(b); *see United States v. Ness*, 466 F.3d 79, 82 (2d Cir. 2006). Turning to the first prong of the plain error test—whether an error occurred—we find that the district court did not abuse its discretion in admitting this evidence. *United States v. Brand*, 467 F.3d 179, 200 (2d Cir.2006). Whether or not Favorite was a member of the conspiracy, the statements of the other conspirators, including Burkett, were admissible against Mayers as nonhearsay, as were Mayers's own statements, *see* Fed.R.Evid. 801(d)(2)(A), and Favorite's statements in speaking with the conspirators were admissible to render their statements intelligible, *see United States v. Sorrentino*, 72 F.3d 294, 298 (2d Cir.1995).

■ Finally, Mayers claims that the district court erred in two respects in calculating his sentence under the Sentencing Guidelines. First, the district court at sentencing stated its intention, in determining Mayers's base offense level, to apply a ratio between crack and powder cocaine of 10–to–1 or 20–to–1, rather than the 100–to–1 ratio provided for under the Guidelines, *see U.S. Sentencing Guidelines Manual* § 2D1.1(c) (2005), because it con-

sidered the Guidelines' ratio unjust. In fact, however, it used the 100–to–1 ratio in determining Mayers's base offense level. To the extent that Mayers claims that he is entitled to resentencing because the district court deviated from its stated intention, his claim is foreclosed by our recent holding that district courts may not impose non-Guidelines sentences on the basis of a generalized policy disagreement with the Guidelines' disparate treatment of crack and powder cocaine. *United States v. Castillo*, 460 F.3d 337, 361 (2d Cir.2006). With respect to Mayers's second contention, the government concedes that the district court erred in determined Mayers's criminal history category because it mistakenly assumed that he was engaged in the charged conspiracy while on probation following a state conviction, when instead it appears that he was in jail for most of the approximately three-week period between his state sentencing and the end of the conspiracy. Remand to the district court is appropriate to correct the criminal history calculation and to determine, in turn, how this change affects the Sentencing Guideline calculation and Mayers's ultimate sentence.

For the foregoing reasons, the judgement of conviction is AFFIRMED and the case is REMANDED in part for resentencing.